UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KEISHA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 24-019-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| EASTERN KENTUCKY UNIVERSITY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Eastern Kentucky University ("EKU") has moved to dismiss Plaintiff Keisha Williams' remaining claim for lack of prosecution under Rule 41(b) of the Federal Rules of Civil Procedure. [Record No. 76] Following careful review of the history of the case and Plaintiff Keisha Williams' failure to cure her pretrial deficiencies pursuant to directions and warnings by the Court, the undersigned concludes that, despite the leniency afforded to litigants proceeding *pro se*, dismissal is warranted. Therefore, EKU's motion will be granted.

## I. Background

Williams filed this action alleging employment discrimination after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). [Record Nos. 1 and 1-1] She was subsequently granted pauper status by the Court. [Record No. 6] On February 19, 2024, EKU filed a partial motion to dismiss claims that Williams failed to allege in her complaint with the EEOC. [Record No. 9] Almost one month later, and after receiving no response from Williams, the Court determined that EKU had discharged its burden under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Record No. 12] As a result, it dismissed

- 1 -

"Williams' claims of discrimination based on color and gender/sex and any claims based on discrete conduct alleged to have occurred before July 15, 2022." [Record No. 12 at 1] Thereafter, a scheduling order was entered, which included instructions to the parties concerning when and how to submit their pretrial filings in advance of trial (initially set for February 25, 2025). [Record No. 17]

During the discovery period, Williams contested whether she needed to travel to be deposed in Kentucky as she had since relocated to Indiana. United States Magistrate Judge Matthew Stinnett provisionally concluded that Williams was not entitled to a deposition by remote video conference and that she "must attend her deposition in person at the place and time to be noticed by Defendants." [Record No. 30] She was later deposed at a neutral location in Lexington, Kentucky. [*See* Record No. 38.]

After the close of discovery, EKU moved for summary judgment on all claims. [Record No. 43] About six weeks later, the Court ruled on the motion after receiving no response from Williams. [Record No. 49] The undersigned determined that EKU had discharged its burden at summary judgment on all counts except for Williams' claim of wrongful termination. *Id.* Concerning that claim, EKU cited the wrong legal standard (terminations from disciplinary actions instead of terminations from reorganizations) which contributed to its failure to meet its burden. *Id.*

Having received notices and joint status reports from Williams but no response on either motion, the Court issued an order on December 27, 2024, noting her failure to respond to the recent motion and directing her to show cause by January 16, 2025, why her case should not be dismissed for failure to prosecute. [Record No. 50] The parties tendered their monthly status report ten days before time expired for Williams to show cause. [Record No. 51]

Because there was no mention in the status report of the show cause order and no response from Williams had been received, the Court issued a second show cause order on January 23, 2025, directing her to explain why her case should not be dismissed for failure to prosecute. [Record No. 52] Williams responded[1] to the second show cause on January 28, 2025, asserting that the last mailing she received was the summary judgment opinion on December 28, 2024. [Record No. 53] She did not, however, address her failure to respond to the motion for summary judgment or why the matter should not be dismissed for failure to prosecute. *Id.* Instead, Williams outlined events that established she had notice of the motion on October 30, 2024, and that she had taken no independent action since November 18, 2024 (when she purportedly emailed Magistrate Judge Stinnett's chambers). *Id.* However, recognizing her *pro se* status and efforts to respond, the Court set aside the show cause orders. [Record No. 54]

EKU submitted its pretrial filings as required by the scheduling order on January 28, 2025. [Record Nos. 55–58] The following day, the defendant tendered a notice concerning Williams' non-compliance with the pretrial filing deadline because it had not yet received her witness list and summaries of expected testimony, exhibit list and numbered exhibits, proposed jury instructions (as the parties were unable to reach an agreement), and pretrial memorandum. [Record No. 59] The notice attached email correspondence establishing EKU's efforts to obtain Williams' pretrial filings (including emailing her the relevant sections of the scheduling

---

[1] Counsel for EKU affirmed during the pretrial conference that it was never served her response (among other filings) and, therefore, was denied an opportunity to contest her assertion that she was prosecuting her case. [*See* Record No. 90 at 4.]

order) and her insistence that it either already had those documents or would have them once the Court docket was updated. [Record No. 59-3]

Williams then began emailing the undersigned's chambers, often multiple times a day. Initially, she was copied opposing counsel but then began emailing chambers *ex parte* and, at times, copying Magistrate Judge Stinnett's chambers. From January 29, 2025, to February 4, 2025, Williams sent a total of thirteen emails to chambers, but none of which contained her required pretrial filings.

Thereafter, EKU tendered a motion *in limine* seeking the exclusion of witnesses Williams failed to disclose; testimony related to emotional distress and causation concerning any medical condition as no expert had been disclosed; and any evidence regarding insurance coverage, financial disparity between the parties, and punitive damages. [Record No. 61] It reserved the right to submit a supplemental motion should it later receive pretrial filings from Williams. *Id.* at 1. In the order continuing the trial (due to a criminal trial conflict) until September 23, 2025, the Court admonished the parties that, as provided in the scheduling order, chambers email is not for *ex parte* communications and threatened sanctions if such impermissible use continued. [Record No. 62]

But before that order was entered, Williams had emailed a response to EKU's motion *in limine* to chambers. In addition to sending her response by email, she also mailed it on a flash drive, addressed to the undersigned's chambers.[2] The flash drive also contained 76 files consisting of documents (totaling roughly 600 pages), audio recordings, and image files, some

---

[2] The order resolving EKU's motion *in limine* explained that the local rules direct *pro se* litigants to file materials addressed to the *Clerk* by postal mail, unless directed to use a different method by a scheduling order or otherwise. [*See* Record No. 66 at 2.]

of which could not be opened.  However, none of the files were numbered and the majority related to claims that were already dismissed.

EKU also received a similar document dump: Williams resent her Rule 26 disclosures and referenced exhibits to EKU's motion for summary judgment.  EKU tendered its first supplemental motion *in limine* on February 18, 2025. [Record No 64]  However, it maintained that while Williams provided her purported exhibits and witnesses to it after the close of business on February 4, 2025 (one week late), she still failed to provide a witness list with anticipated testimony, an exhibit list, pretrial memorandum, or a copy of proposed jury instructions.  *Id.* at 1 n.2.

After nearly two months with no response to the supplemental motion, the Court ruled on both pending motions *in limine* and directed the Clerk to file Williams' emailed (and mailed on a flash drive) response to the first motion in the record.  [Record Nos. 66–67] The memorandum order granted EKU's first motion with respect to the witnesses Williams had identified but denied the motion concerning "all other witnesses for whom there is no summary of anticipated testimony" noting it was too harsh a sanction for a *pro se* plaintiff under the circumstances.  [Record No. 66 at 7]

The order granted EKU's second motion in its entirety on the merits and because Williams failed to respond within 21 days as required by the local rules.  *Id.* at 7–8. The Court further outlined the claims that had been dismissed and the sole remaining claim of wrongful termination.  *Id.* at 2–3.  And the Court allowed Williams an opportunity to cure the deficiencies to her pretrial filings by May 2, 2025 (providing the relevant portions of the scheduling order) and warned her that failure to do so could result in the exclusion of additional evidence or other sanctions.  *Id.* at 8.

- 5 -

Five days after the deadline expired, Williams filed a "Response to Memorandum" that only included three purported expert witnesses and their anticipated testimony. [Record No. 70] The Court entered an order noting that two of the listed witnesses were already excluded in the previous memorandum order and excluded the remaining witness because her anticipated testimony would consist only of hearsay. [Record No. 71] As a sanction for failing to cure her pretrial deficiencies, the order excluded any other witness Williams may have intended to call, other than herself. *Id.*

On August 18, 2025, with trial set to commence about a month later (and still having not received Williams' pretrial filings), the Court scheduled a pretrial conference for August 9, 2025. [Record No. 75] The next day, EKU moved to dismiss the case for lack of prosecution, asserting that it had yet to receive the pretrial filings and outlining Williams' relevant actions and inactions throughout the pendency of the case. [Record No. 76] Williams timely responded, arguing that dismissal is inappropriate because her wrongful termination claim has merit, her conduct does not constitute willful noncompliance or bad faith, EKU's settlement posture is unreasonable and lacks good faith, and dismissal would set a dangerous precedent for employment discrimination. [Record No. 77] She further requested that "the Court order the parties to engage in good-faith mediation or settlement discussions." *Id.* EKU's reply addressed her arguments and included email correspondence establishing its efforts to obtain discovery and pretrial filings from Williams. [Record No. 78] The defendant also argued that Williams' lack of prosecution has prejudiced its attempts to prepare for trial and that Williams has only acted when compelled. *Id.*

EKU submitted a second supplemental motion *in limine* based on arguments and statements Williams made in her response to its motion to dismiss that suggested she intended

to offer undisclosed or already excluded evidence. [Record No. 79] On the morning of the pretrial conference, Williams filed a response to the second supplemental motion *in limine* and a motion for leave to tender a sur-reply on the motion to dismiss. [Record Nos. 81–82]

During the pretrial conference, the Court first heard arguments on EKU's pending motion to dismiss for failure to prosecute. EKU recounted Williams' failures in complying with the Court's prior orders, lack of service to the defendant on various filings, and general failure to prosecute her case, particularly concerning the absence of responses on several motions. [Record No. 90 at 3–5] It further outlined its difficulty and resulting prejudice in defending the case and preparing for trial with Williams' lack of consistent service and persistent failure to cure her pretrial filings deficiencies. *Id.* at 3–7.

The Court then noted its difficulty in preparing the case to be heard by a jury without the plaintiff's pretrial filings. It referenced the numerous files Williams mailed to chambers on a flash drive, containing hundreds of pages, which it could not "make heads or tails of" regarding "what the plaintiff would anticipate or expect to introduce in terms of exhibits." *Id.* at 5.

Williams asserted that she was doing her best to keep up with the Court's orders and EKU's requests but that she was having difficulty navigating the judicial system *pro se*. *Id.* at 8. The undersigned reiterated that the plaintiff still had not cured her deficiencies to her pretrial filings and stated, "you've been reminded of your obligation to do that on a number of occasions, and you haven't complied." *Id.* at 9. Again, the undersigned directed Williams to refer to the scheduling order if she was confused about the pretrial filings requirement and explained the need for those filings to be provided both to EKU and the Court. *Id.* at 8–9. In a final attempt to obtain the necessary filings the Court offered one final chance:

- 7 -

Court: So if I were to ask you how long would it take you to produce copies, hard copies not on a thumb drive or flash drive, hard copies of exhibits not only that you have sent to the defendant but that you intend to use at trial, how long would it take you to put that together?

Williams: Less than 48 hours, sir.

Court: And you can assure me that if you were to do that, you were to number those documents, they were to comply with my earlier orders, you could assure me that those were documents that you would have sent to the defendants earlier?

Williams: Yes, sir.

*Id.* at 14–15.

A second criminal trial conflict indicated that the parties' trial would likely be continued. The Court, after considering the defendant's burden and potential prejudice from the late pretrial filings and the plaintiff's difficulty complying with past orders due to her *pro se* status, presented a compromise. Williams had until the close of business **Friday, September 12, 2025,** to cure her pretrial filings deficiencies (including exhibits), submit them to the Clerk for filing and provide copies to counsel for EKU. *Id.* at 20. Then, EKU would have two weeks to take limited discovery, if necessary, on the sole remaining claim after considering the exhibits it received. *Id.* at 21. And once discovery closed, the defendant was given two weeks to submit a renewed motion for summary judgment. *Id.* If there remained fact issues for submission to a jury, the trial would be rescheduled. *Id.* at 21–22. After ensuring that the plaintiff understood the Court's **final directives** and where to find instructions on the pretrial filings, the Court granted Williams leave to file her sur-reply and took the motion to dismiss under advisement. *Id.* at 30.

On September 12, 2025, at 5:04 p.m., EKU filed a notice of partial noncompliance asserting that it failed to receive Williams proposed jury instructions. [Record No. 85] Then,

on September 16, 2025, the Clerk's officed received by mail Williams' response to EKU's notice of partial noncompliance [Record No. 86]; pretrial memorandum, witness list, and exhibit list with exhibits attached [Record No. 87]; and proposed jury instructions [Record No. 88]. Notwithstanding Williams' certification that she served the Clerk *via* US postal system on September 11, 2025, the UPS envelope was postmarked on September 15, 2025, three days after the pretrial filings were to be *filed* with the Clerk's office. [*Compare* Record No. 87 at 8 *with* Record No. 87-4.] Williams did not contest her failure to provide EKU with proposed jury instructions but, instead, argued that she already provided them to the defendant and the Court. [Record No. 86]

## II. Legal Authority

"It is settled law that Courts have inherent power to act *sua sponte* 'to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief.'" *Vesely v. Cuyahoga Metro. Hous. Auth.*, 130 F.R.D. 83, at *84–*85 (N.D. Ohio 1990) (quoting *Link v. Wabash Railroad Co.*, 370 U.S. 626 (1962)). Rule 41(b) of the Federal Rules of Civil Procedure recognizes this inherent power. *Id.* at 84. The Sixth Circuit applies a four-factor test in evaluating the appropriateness of a dismissal under Rule 41(b): "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that a failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal. *Carthon v. Cent. State Univ.*, 290 F.R.D. 83 ,*87 (S.D. Ohio 2013) (citing *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008)).

- 9 -

"'Competing concerns that guide a Court's decision to dismiss an action for failure to prosecute [are] as follows: 'the Court's need to manage its docket, the public's interest in expeditious resolution of litigation, and the risk of prejudice to a defendant because the plaintiff has failed to actively pursue its claims,' and, '[o]n the other hand[,] . . . the policy which favors disposition of cases on their merits.'" *Carthon*, 290 F.R.D. at *87 (S.D. Ohio 2013) (quoting *Little v. Yeutter*, 984 F.2d 160, 162 (6th Cir. 1993)). Nevertheless, "'[t]he dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of [delay or] contumacious conduct by the plaintiff.'" *Id.* (quoting *Schafer*, 529 F.3d at 736–38); *Vesely*, 130 F.R.D. at *85 (citing *Carter v. City of Memphis, Tennessee*, 636 F.2d 159, 161 (6th Cir. 1980) (per curiam)). "'Contumacious' is defined as 'perverse in resisting authority' and 'stubbornly disobedient.'" *Id.* (quoting *Schafer*, 529 F.3d at 737)).

Concerning delay, "[d]ismissal with prejudice is particularly appropriate when 'the plaintiff, as distinguished from his counsel, [is] personally responsible for the delay.'" *Vesely*, 130 F.R.D. at *85 (quoting *Ford v. Sharp*, 758 F.2d 1018, 1021 (5th Cir. 1985)). This is especially true when a *pro se* plaintiff has no attorney to blame for his or her delay or inaction. *See id.* (dismissing a *pro se* plaintiff's lawsuit for failure to prosecute). "Where, for example, a pro se litigant fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Id.* (citing *Jourdan*, 951 F.2d at 110); *see also Weaver v. Estes*, 2005 WL 2388284, at *1 (W.D. Ky 2005) (ordering dismissal where a *pro se* plaintiff failed to respond to defendant's motion to dismiss, motion for summary judgment and had not filed a pretrial memorandum).

- 10 -

"While courts apply 'less stringent standards' in determining whether pro se pleadings state a claim for which relief can be granted, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), pro se plaintiffs are not automatically entitled to take every case to trial." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). And as the Sixth Circuit has noted, "the lenient treatment generally accorded to pro se litigants has limits." *Id.* (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991)).

### III. Analysis

#### (1) whether plaintiff's failure is due to willfulness, bad faith, or fault

"To support a finding that a plaintiff's actions were motivated by willfulness, bad faith, or fault under the first factor, the Sixth Circuit has found that a plaintiff's conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his [or her] conduct on those proceedings.'" *Carthon*, 290 F.R.D. at *87 (quoting *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005)). While there is no indication that Williams has evidenced an intent to thwart judicial proceedings, she has, at times, exhibited a reckless disregard for the effect of her conduct on those proceedings. For example, she did not respond to EKU's first motion to dismiss or motion for summary judgment, resulting in extra difficulty to the undersigned in resolving those motions. And when the Court issued its first and second show cause warnings following her failure to respond to the motion for summary judgment, her response on January 28, 2025, never addressed why she failed to respond or why the matter should not be dismissed for failure to prosecute. [Record No. 53]

The same is true for her litany of emails improperly sent to the undersigned's and the Magistrate Judge's chambers despite an admonition in the scheduling order matter that the

- 11 -

email address was not intended for *ex parte* communications. And that behavior did not cease until the undersigned entered an order threatening sanctions if it continued.

Even now, after the Court reiterated that Williams had yet to cure her pretrial filings and repeated its instructions several times that they were to be complete and filed with the Clerk and served upon the defendant before the close of business Friday, September 12—she failed to comply. [*See generally* Record No. 90.] Ultimately, she served incomplete pretrial filings on the defendant, filed them with the Clerk four days after they were due, but then insisted that she had already submitted her proposed jury instructions to the Court and defendant in January.

The Court is keenly aware that prosecuting actions *pro se* can be challenging, but it warned Williams during the hearing that she was "kind of at the end of the rope at this point because [she has] been given a lot of latitude in the case." [Record No. 90 at 11] And the preference for resolving her cases on the merits must be weighed against judicial resources and the public interest. *Carthon*, 290 F.R.D. at *87. In short, Williams has exhibited a reckless disregard for the effect her actions or inactions on Court proceedings.

**(2) whether the opposing party was prejudiced by the plaintiff's conduct**

"[A] defendant is prejudiced by plaintiff's conduct where defendant 'waste[d] time, money, and effort in pursuit of cooperation which [plaintiff] was legally obligated to provide.'" *Carthon*, 290 F.R.D. at *87 (quoting *Schafer*, 529 F.3d at 737). Here, EKU has provided numerous examples of its efforts to work with Williams. It has copied portions of the scheduling order in emails to her, incorporated edits she requested to jury instructions, accommodated her desire to be deposed in a neutral location, and explained to her various court proceedings and the law *via* email. EKU has filed notices in the record, attempting to

keep the Court abreast of its difficulties working with Williams to ensure the Court was not left in the dark. And it has filed *four* motions *in limine* responding to Williams' purported exhibits and witnesses, which have been moving targets.

To be sure, Williams argues it is EKU that is being difficult. But in making this argument, she continues to reference what she perceives to be EKU's lowball offers to settle the case. And she further contends that EKU's push for responses, depositions, and pretrial filings demonstrate that she is being mistreated. But it is Williams who filed this action, and it is her duty to prosecute the case and move it along—not just the defendant's.

**(3) whether plaintiff was warned that a failure to cooperate could lead to dismissal**

"'[P]rior notice, or the lack thereof, is . . . a key consideration' in determining whether a district court abused its discretion in dismissing a case for failure to prosecute." *Carthon*, 290 F.R.D. at *87 (quoting *Schafer*, 529 F.3d at 737). Here, Williams was warned that her failure to prosecute this matter could result in dismissal. As mentioned previously, the Court issued two show cause orders, although the first one arrived in the mail late to Williams. [*See* Record No. 77-1.] Again, during the recent pretrial conference, she was warned of various sanctions for noncompliance and told that no further latitude would be provided, notwithstanding her *pro se* status.

**(4) whether less drastic sanctions were imposed or considered before dismissal**

Past orders to show cause alone are "sufficient to satisfy the fourth factor in the test for failure to prosecute." *Carthon*, 290 F.R.D. at *87 (citing *Rogers v. City of Warren*, 302 F. App'x 371, 378–79 (6th Cir. 2008)). And in this case, the Court issued at least one show cause order that Williams acknowledged she received. The order continuing the jury trial contained a clear admonishment that continued improper use of chambers' email account could result in

sanctions.  The Court's order on EKU's first two motions *in limine* directed her to cure her pretrial filings and warned that failure to do so could result in the exclusion of more evidence or additional sanctions.  And Williams was later sanctioned by excluding any witness that she might call (other than herself) due to her failure to provide a witness list with a summary of anticipated testimony as directed.

The undersigned has carefully considered other sanctions.  However, a monetary sanction would be inappropriate as Williams could not afford to pay the filing fee and was granted *in forma pauperis* status.  And having already excluded all witnesses (except Williams), all that can be taken at this juncture would be her exhibits.  And such a sanction would likely be fatal to Williams' sole remaining claim because she would be left with only her own testimony to meet her burden of proof.

For her wrongful termination claim, Williams would need to establish that she was: "(1) a member of a protected class; (2) discharged; (3) qualified for the position; and (4) that a 'similarly situated' non-protected person was treated better." *Rachells v. Cingular Wireless Emp. Servs.*, LLC, 732 F.3d 652, 661 (6th Cir. 2013) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992))  "[T]he fourth element requires the plaintiff to provide 'additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Geiger v. Tower Auto.*, 579 F.3d 614, 622–23 (6th Cir. 2009) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).  This modification requires identifying the group of employees to whom the plaintiff should be compared (*i.e.*, "comparable employees"). *Rachells*, 732 F.3d at 661–62. And without any witnesses or exhibits, Williams would struggle to satisfy her burden of proof.

- 14 -

At this point in the case, Williams has not explained or offered any evidence indicating how her burden of proof could be satisfied.

### IV.  Conclusion

Dismissal is an appropriate and necessary sanction under the circumstances presented. Williams has failed "to comply with . . . easily understood court-imposed deadline[s], there is no basis for treating [her] more generously than a represented litigant."  *Vesely*, 130 F.R.D. at *85.  Ultimately, "the lenient treatment generally accorded to pro se litigants has limits." *Pilgrim*, 92 F.3d at 416.  And because she would be outside the ninety days for filing suit after receiving her right to sue letter from the EEOC, even dismissal without prejudice would effectively prevent the remaining claim from being re-filed.  Therefore, it is hereby

**ORDERED** as follows:

1.      Defendant Eastern Kentucky University's motion to dismiss for lack of prosecution [Record No. 76] is **GRANTED**.

2.      Defendant Eastern Kentucky University's supplemental motions *in limine* [Record Nos. 79 and 89] are **DENIED** without prejudice as moot.

3.      Plaintiff Keisha Williams' sole remaining wrongful termination claim is **DISMISSED**, with prejudice.

Dated:  September 22, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky